ANGEL TEODOSIO MERCADO, ETC., Plaintiff and Appellee, v. THE AMERICAN RAILROAD COMPANY OF PUERTO RICO, Defendant and Appellant.

No. 8492. Argued November 10, 1942.—Decided January 15, 1943.

*Mariano Acosta Velarde* for appellant. *Gustavo Cruzado Silva* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The eighteen assignments of error on which this appeal is grounded, with the exception of some upon which we shall pass later on, are virtually condensed to one question: whether the trial court committed manifest error in the weighing of the evidence. According to plaintiff's testimony, the facts may be briefly set up thus:

On October 23, 1938, the plaintiff, who was at that time under fourteen years of age, was sent by his father from Stop 27 at Martín Peña, where he lived, to the Settlement of San Patricio, near the railroad crossing in front of Camp Buchanan, to collect from Delfín Cosme $1.50 which the latter owed him. In order to return to his home the boy decided to take the train which passes by that place about four or five o'clock, whereupon he went to the station of San Patricio. When the train arrived and the plaintiff had placed his foot on one of the steps of the grades leading to the coach, the train suddenly started with a violent jerk which threw him backwards, as a consequence of which he sustained a wound in the occipital region, as well as the amputation caused by the wheels of the train of the first and second toes of his left foot and the back part of the right foot, which later resulted in the amputation of his right leg due to the neurosis of the tissues and of the bones developed by reason of the wound sustained on the foot.

The evidence of the defendant and appellant tended to prove that on that afternoon the plaintiff was together with some boys at the station of Bayamón. That probably before leaving the station, the plaintiff went around the train and got on the left side thereof, that is, the side opposite the station, in a certain way unknown to the defendant and taking hold of one of the tensors of the next to last coach of the train, he succeeded in keeping that position until, at about a kilometer or kilometer and one half after leaving the station of San Patricio, some boys who were passengers in the train saw plaintiff's hand holding the tensor under the wagon, and notified the conductor who ordered the train to be stopped. Defendant's employees as well as some passengers alighted from the train and after looking for the boy under the coaches, found him on the track, between the rails, at a distance of about thirty or forty meters from the last coach. He was then taken to the platform of the coach and afterwards left at the Martin Peña station from which place he was taken by his father to the Municipal Hospital.

Upon deciding the conflict in the evidence, the trial judge stated the following:

"We are not going to analyze all of the evidence in detail. We are simply going to consider certain particulars thereof in order to show the improbability of defendant's theory. We have already set forth the injuries received by plaintiff: a wound of one inch in the occipital region and lesions on both feet. The rest of the body is intact. These injuries, in our opinion, clearly show the truthfulnes of plaintiff's theory; when the train started, it threw the plaintiff backwards, as he says, off the track, receiving, upon falling to the ground, the wound in the occipital region to which the physician refers in his testimony; his limbs, that is his feet, being then the only part of his body which was run over by the train. It should be noticed that the train ran over two of the toes of his left foot, the first and second ones. On his right foot, the amputation although greater, was only of the back part thereof and even though it is true that subsequently the leg had to be amputated, this was

not due to the injury received directly on the leg but to a neurosis of the tissues and of the bones as a consequence of the injuries received on the back part of the foot. On the other hand, if, while the train was in motion, the boy fell from the position in which defendant makes him appear in all the photographs presented by it (exhibits M, O, and P, of the defendant), that is, on the middle of the track underneath the next to last coach (defendant's theory) those injuries above set forth would not have been the only ones, sustained by the boy. Upon an examination of the foregoing exhibits we have not the slightest doubt that as was correctly testified by the brakeman and witness for the defendant, Inés Serrano, if the minor plaintiff had fallen beneath the next to last coach, the car trucks and crossbars of the last and next to the last coach would have torn him to pieces."

" * * * * * * *

"In brief, there is no reason why we should have any doubt as to plaintiff's testimony; on the contrary, we believe it entirely. This being so, the statute is clear in the sense that it is negligence on the part of a public carrier to start a train when the passenger is in the act of boarding it. 13 C.J.S. 1376, §730."

We have examined plaintiff's testimony in connection with the injuries sustained by him and we can not agree with the appellant that the lower court committed manifest error in the weighing of the evidence especially after examining the photographs of the coaches and the tracks which were introduced by defendant in order to show the way in which the accident happened. Like the trial judge, we think that if the plaintiff had taken the position shown by the photographs it was almost impossible for the boy not to have been torn to pieces when the last two coaches ran over him. The improbability of defendant's theory is still more evident if we take into account that the only wounds suffered by the plaintiff were those of both feet and of the occipital region, which injuries because of their location are in perfect harmony with the plaintiff's testimony.

The appellant contends that the lower court, in weighing the evidence, considered only one part of the same and bases

these allegations on the fact that when the court discussed the theory of both parties it began by saying:

"We are not going to analyze all the evidence in detail. We are simply going to consider certain particulars thereof in order to show the improbability of defendant's theory."

Appellant's conclusion is groundless. What readily appears from the above-copied phrases, and undoubtedly what the judge had in mind, was, that in order to show the improbability of defendant's theory, it was sufficient to consider certain particulars which he immediately went on to discuss.

■ Since defendant's witnesses who testified in connection with the accident are numerous and the judge, as we have seen, based his judgment on plaintiff's testimony, appellant maintains that the preponderance of the evidence is in its favor and invokes the case of *Rosado* v. *Ponce Ry. & Light Co.*, 20 P.R.R. 528, wherein the following words of the Supreme Court of Tennessee are copied with approval:

"The term 'Preponderance of Evidence' does not mean a mere numerical array of witnesses but it means the weight, credit, and value of the aggregate evidence on either side. If, however, the witnesses are of equal fairness, candor, intelligence, and truthfulness, equally well corroborated by the remaining testimony, and are equally free from interest in the suit, then the preponderance is shown by the number of witnesses." *Willcox* v. *Hines*, 100 Tenn. 524, 66 Am. St. Rep. 761.

From the above citation it clearly appears that the greater number of witnesses is not the only element for determining on which side falls the preponderance of the evidence. In order that such circumstance should be decisive the witnesses of both parties must be "equally well corroborated by the remaining testimony" and we have already seen that the attendant circumstances, that is, the place where, according to the defendant, plaintiff was found when its employees took him up, as well as the location of the injuries sustained.

strongly corroborate plaintiff's theory and tend to destroy that of defendant's. This being so, §524 of the Code of Civil Procedure is applicable and in its pertinent part reads as follows:

"Section 524. The effect of evidence is not arbitrary, to be exercised with legal discretion, and in subordination to the rules of evidence.

"The court or jury is not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in its mind, against a less number or against a presumption or other evidence satisfying its mind.

" * * * * * * *"

 Appellant is right in maintaining that the court *a quo* erred in admitting over its objection a certificate relating to plaintiff's birth in order to prove that the latter was the legitimate son of Angel Teodosio Mercado who appeared in this suit as his father with *patria potestas*. *People* v. *Márquez*, 43 P.R.R. 43. But such certificate was not the only evidence which was introduced in this case to prove the relationship between Angel Teodosio Mercado and said minor, inasmuch as the testimony of said Angel Teodosio Mercado to the effect that the plaintiff was his son was also admitted, although over defendant's objection, it appearing also from the record that at the time of the accident said minor was living with his alleged father and that he received the injuries while doing errands for him. However, §250 of the Civil Code provides that the records in the registry shall be evidence of civil status, and any other evidence can be admitted only when such records have never existed or the books of the registry should have disappeared or when a suit is instituted before the courts. See 4 Wigmore on Evidence (3d ed., 1940) §1336, wherein there appears an elaborate study of our statute and of the decisions of this court construing the same.

It is true that §38 of the Vital Statistics Registry Act of Puerto Rico, approved April 22, 1931, p. 228, provides that

the copy of the record of any birth, marriage or death, after being certified by the Commissioner of Health or by any person by him authorized, shall constitute *prima facie* evidence before all courts of justice of the facts set forth therein, and that there was omitted from said act the provision to the effect that certified copies of those records shall be the best evidence of its content as is provided by §250 of the Civil Code. But since said act applies exclusively to the births, marriages, and deaths recorded after the statute became effective, it is evident that this provision does not affect those entries, like plaintiff's birth herein, recorded in the Civil Registry prior to the date on which said Act of 1931 went into effect. Notwithstanding this, we think that in the instant case, for the reasons which we shall set forth, the oral evidence was admissible in order to prove the point in question. If the action in this case had been brought by Angel Teodosio Mercado in his own behalf as father of the minor or if the cause of action instituted in favor of the latter had arisen from his rights as son of Angel Teodosio Mercado, we would not hesitate in holding that the admission of the oral evidence was prejudicial error, since the best evidence, a certificate of the Civil Registry, existed. But in the present case the question of paternity is entirely extraneous to the cause of action on behalf of the minor and it can in no way affect its existence. The mission of Angel Teodosio Mercado is here limited to complying with the duty which the law imposes on the father and, in his default, on the mother, of representing his non-emancipated children in all the actions which, like the one herein, may be for their benefit. Under such circumstances, the relationship between the minor and his alleged father is, we might say, a collateral question to which the strict application of §250 of the Civil Code does not attach. In the case of *People* v. *Ruiz,* 31 P.R.R. 297, this court held that said section refers to proof of civil status and that the age of a person is not

strictly part of his civil status, for which reason oral evidence was admitted in order to prove that the defendant in an action for aggravated assault and battery was more than twenty-one years of age. In *People* v. *Ibern,* 31 P.R.R. 867, it was held that a widow who was with her husband up to the moment of his death was a competent witness to prove his death. And lastly, in *People* v. *Millán,* 35 P.R.R. 817, oral evidence was admitted in order to prove that the age of the victim was less than fourteen years, although an action of rape was involved in which said evidence was an essential element to the offense. We see no reason why in the present case the oral testimony should not be admitted, especially when it is the testimony of the father who is usually the person who furnishes all the necessary information for the certification.

 Besides, the interests of the defendant are not prejudiced in the least, for, upon satisfying the judgment, the amount is deposited in the lower court to be invested in the most profitable way in behalf of the minor, who, of course, having received the benefit of the compensation, would be barred from bringing a new action on the same cause of action. But in the event that the admission of the oral testimony is erroneous, such error has not impaired the substantial interests of the appellant, and this being so it can not operate as a ground for a reversal of the judgment. Section 142, Code of Civil Procedure.

 In fixing the amount of damages and allowing the costs and attorney's fees the trial court stated the following:

". . . Now, there is only left the determination of the amount to be awarded. The plaintiff, a boy 14 years of age at the time of the accident, was confined in the hospital from October 23 until December 15, 1938. He suffered the amputation of the big toe and a fracture of the second toe. His right leg was also amputated at the middle third. In *Delgado* v. *Díaz,* 30 P.R.R. 115, wherein the boy suffered an accident to his leg which the experts testified would render him more or less incapable of steady work, but where

there was no amputation, we allowed $3,000. In the instant case, we shall allow $5,000, with the imposition of costs and attorney's fees; the amount of the latter items, considering the compensation awarded and that the trial lasted for several days, shall be fixed at $500.''

In our opinion, the trial court properly exercised its discretion in fixing the damages sustained by the plaintiff at $5,000, considering the age of the plaintiff and the seriousness and permanent nature of the injuries sustained.

■ Lastly, defendant alleges that we should reverse the imposition of attorney's fees, for if plaintiff claimed an award of $25,000 and only $5,000 was awarded it appears from such circumstance that there was no obtinacy on its part in opposing the exaggerated claim of the plaintiff. We have already decided that such circumstance alone does not imply the lack of obstinacy. *Reyes* v. *Aponte*, 60 P.P.R. 867 and *Font* v. *Viking Construction Corp.*, 58 P.R.R. 691. And this is so because defendant in defending itself herein does so not because in its opinion the claim is exaggerated, but because it rejects all liability, whether great or small, for the damages suffered by the appellee. If the defendant in effect believes that the amount claimed is exaggerated and that is the only reason which it has for opposing plaintiff's petensions, it is its duty to admit frankly its liability and to limit the controversy to a determination of the amount of be awarded. It seems unnecessary to explain that when the circumstances of the case really justify the defendant in believing that plaintiff's pretensions lack merit, it is not bound to admit a responsibility which it, in good faith, does not believe it has. In view of all the attendant circumstances and, among others, the elaborate trial which was had and which lasted for several days and wherein nineteen witnesses for the defendant and four or five for the plaintiff were examined, we do not think that the trial judge exercised his discretion improperly in allowing $500 as attorney's fees.

For the reasons stated, the appeal should be dismissed and the judgment appealed from affirmed.

Mr. Justice Snyder did not participate herein.